UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 17-12111-RGS

TODD HALL

v.

HAYES MANAGEMENT CONSULTING,
PETER BUTLER, and SHAWN DEWANE

MEMORANDUM AND ORDER ON DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT

November 26, 2018

STEARNS, D.J.

Todd Hall brought this lawsuit against his former employer, Hayes Management Consulting, and his erstwhile supervisors, Peter Butler and Shawn DeWane. The extant Count alleges violations of the anti-retaliation provisions of Mass. Gen. Laws ch. 151B, § 4 (Count IV).[1] More specifically, Hall alleges that defendants retaliated against him for, *inter alia*, filing a charge of employment discrimination based on his sexual orientation. For

---

[1] On January 11, 2018, Hall voluntarily dismissed Counts I-III of the Complaint, which had alleged sexual orientation discrimination under state and federal law, and retaliation under federal law. Consequently, only the Chapter 151B retaliation claim remains. Dkt # 13. This court retains jurisdiction on diversity grounds.

the reasons to be explained, defendants' motion for summary judgment will be allowed.

## BACKGROUND

The facts, viewed in the light most flattering to Hall as the nonmoving party, are as follows. Hall was hired by Hayes in August of 2009 as a Senior Sales Executive. Hayes is in the business of providing consulting services and software to healthcare organizations. Sales representatives, like Hall, are assigned to designated territories (that can fluctuate over time) and are expected to meet an annual sales quota based on booked revenue (defined as "the total contract value for all contracts executed"). Defs.' Stat. of Facts (DSOF) ¶¶ 7-10. Sales representatives earn commissions based on billed revenue (defined as "the amount actually billed to the client"). *Id*. ¶ 12. A salesperson's failure to meet his or her assigned sales quota can result in disciplinary measures, ranging from placement on a performance improvement plan to termination.

Hall maintains that he "consistently ranked among the top three revenue producers in the entire company." Hall's Stat. of Facts (HSOF) ¶ 44b. However, Hall met his annual sales quota only once, in 2011. DSOF

¶ 44.[2]  That year, Hall received a positive performance review that praised his networking, collaboration, and "candid and open style."  HSOF ¶ 17d.

For the first three years of his employment, Hall was supervised by defendant Butler, the President and CEO of Hayes.  Around the fall of 2012, Hall confided to Butler that he is a homosexual.  Butler responded that "it really didn't matter."  DSOF ¶ 18.

In the summer of 2012, defendant DeWane was hired as an Executive Vice President of Sales and Marketing.  Among his duties was the supervision of the sales representatives, including Hall.   Although Hall never disclosed his homosexuality to DeWane, Hall inferred from his hostile attitude and remarks that DeWane knew that Hall is gay.  HSOF ¶¶ 21a-b.  DeWane once quizzed Hall about Atlanta's Midtown area, which is reputed to be a "gay friendly" neighborhood.  *Id.* ¶ 20a.  DeWane also once quipped that California is full of "fruits and nuts," a comment that Hall interpreted as a gay slur.  *Id.* ¶ 21a.  Sometime in the fall of 2012, Hall complained to Butler that DeWane was treating him unfairly because he is gay.  In March of 2013,

---

[2] Hall achieved the following percentages of his sales quotas for the years 2010 to 2015 (in ascending order): 89.4%, 106.4%, 77.4%, 77.7%, 85.3%, and 62.5%.  DSOF ¶ 45.  Hall disputes his 2016 sales numbers, claiming that Hayes calculated them on billed revenue instead of booked revenue.  However, whichever measure is used, Hall met only 50.5% or 76.4% of has assigned quota, respectively.  HSOF ¶ 45b.

3

another sales representative, Lon Myers, complained to Jodi Narahara, then the Director of Human Resources, about DeWane's treatment of Hall. When DeWane learned of the complaint, he confronted Hall, stating that "it makes me so mother f***ing angry you have called my character and integrity into question." *Id.* ¶ 20g. Hall reported the confrontation to Narahara and complained of DeWane's disrespectful treatment of Hayes's clients and employees, particularly women and racial minorities. On May 7, 2013, Butler issued DeWane a written warning, citing his attitude towards Hall and his incitement of "a hostile work environment." *Id.* ¶ 20f.

DeWane routinely made "crude comments . . . about strip clubs and women's bodies." DSOF ¶ 25. In April of 2013, Hall complained to Narahara that he was "being singled out" by DeWane for his refusal to take part in condescending conversations about women, which made him feel uncomfortable. *Id.* ¶¶ 25-27, 30-31.[3] Hall also complained about DeWane to Andrew Treanor, then Hayes's Chief Operating Officer.

On November 5, 2015, DeWane sent Hall an email warning him that he had to improve his sales numbers, as they were "well below where [they] need[ed] to be." *Id.* ¶¶ 47-48. On November 20, 2015, Hall was issued a

---

[3] Arthur Baxter, then the Director of Business Development, independently reported to Narahara around the same time that DeWane had made two female Hayes clients feel uncomfortable.

4

written warning regarding his poor sales performance. The warning also specified steps that Hall was expected to take to improve his sales figures. Hall was also given a reduced sales quota for the fourth quarter of 2015, which he met. On December 1, 2015, Hall complained about the warning to management, but did not make any reference to perceived discrimination or retaliation. In January of 2016, Hall was placed on a performance improvement plan because his 2015 sales *in toto* "were significantly below target." *Id.* ¶ 56. Hall thereafter met his first quarter 2016 sales quota for software.[4]

On July 18, 2016, Hayes received a letter from Hall's then attorney, Debra Katz, alleging that DeWane had discriminated and retaliated against Hall because of his sexual orientation. Katz requested that DeWane be replaced as Hall's supervisor. Hayes responded immediately and assigned John Cronin, then the Director of IT Administrative Services, as Hall's new supervisor. Hall maintains that Cronin had no experience or knowledge in sales or marketing.[5] On August 10, 2016, Hayes received a second letter from

---

[4] Hall did not meet his consulting services sales quota for that quarter, although he asserts that he did if booked and not billed revenue is used as the measure.

[5] Hall complains that DeWane continued to lead the weekly sales team conference calls in which he was required to participate.

Katz, repeating the allegations of sexual orientation discrimination and retaliation.

Hall did not meet his sales quota for the second half of 2016 or for 2016 as a whole. Hall blames his poor performance on DeWane, alleging that DeWane reassigned a software customer to another sales representative and removed five states from his sales territory. When Hall complained, DeWane yelled, "I am so mother f***ing angry with you because you have pushed me into a corner." HSOF ¶ 60c.

On December 12, 2016, Hall filed charges with the Equal Employment Opportunity Commission (EEOC) and the Massachusetts Commission Against Discrimination (MCAD). He alleged sexual orientation discrimination and retaliation against Hayes and DeWane under state law and against Hayes for retaliation under federal anti-discrimination law.[6] Defs.' Mem. (Dkt # 8), Ex. A. Butler, on the advice of Cronin and Narahara, terminated Hall on January 3, 2017, citing poor work performance. DSOF

---

[6] As previously noted, the federal claims have since been dismissed. Hall also has abandoned the state law sexual orientation discrimination claim.

¶¶ 67, 70.[7] Hall filed this Complaint in the federal district court on October 27, 2017.

## DISCUSSION

Summary judgment is appropriate when, based upon the pleadings, affidavits, and depositions, "there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "To succeed, the moving party must show that there is an absence of evidence to support the nonmoving party's position." *Rogers v. Fair*, 902 F.2d 140, 143 (1st Cir. 1990). Although all reasonable inferences are drawn in the nonmovant's favor, the court cannot "'draw unreasonable inferences or credit bald assertions, empty conclusions, rank conjecture, or vitriolic invective.'" *Pina v. Children's Place*, 740 F.3d 785, 795 (1st Cir. 2014), quoting *Cabán Hernández v. Philip Morris USA, Inc.*, 486 F.3d 1, 8 (1st Cir. 2007).

To make out a prima facie case of retaliation under Massachusetts law, Hall must show that (1) he engaged in a protected activity; (2) he suffered a materially adverse action; and (3) the adverse action was causally linked to his protected activity. *Mole v. Univ. of Massachusetts*, 442 Mass. 582, 591-

---

[7] From 2013 to 2017, eight other Hayes employees were also terminated for poor performance. Hall maintains that three of them were terminated for complaining about DeWane's mistreatment of him.

592 (2004); *Prescott v. Higgins*, 538 F.3d 32, 43 (1st Cir. 2008).[8] "The alleged retaliatory action must be material, producing a significant, not trivial, harm." *Carmona-Rivera v. Puerto Rico*, 464 F.3d 14, 20 (1st Cir. 2006) (citation omitted); *see also McCormack v. Boston Edison Co.*, 423 Mass. 652, 663 (1996) (noting that something more than "subjective feelings of disappointment and disillusionment" is required). "Materially adverse" means that the action "'well might have dissuaded a reasonable worker from making or supporting a charge of discrimination.'" *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006), quoting *Rochon v. Gonzales*, 438 F.3d 1211, 1219 (D.C. Cir. 2006). The test for whether an adverse action is material or produces significant harm is "objective." *Burlington N.*, 548 U.S. at 68-69; *Bray v. Cmty. Newspaper Co.*, 67 Mass. App. Ct. 42, 44 (2006).

If Hall succeeds in establishing a prima facie showing of retaliation, the burden then shifts to defendants to articulate a legitimate, nondiscriminatory reason for the employment action. *McDonnell Douglas*

---

[8] In construing Chapter 151B, Massachusetts courts look to federal law for guidance. *See Tate v. Dep't of Mental Health*, 419 Mass. 356, 361 (1995) ("In construing the Commonwealth's employment discrimination statute, we have looked to the considerable case law applying the analogous Federal statute for guidance."); *Cox v. New Eng. Tel. & Tel. Co.*, 414 Mass. 375, 382 (1993) (noting that the Court may look to the "considerable case law construing and applying the analogous Federal statute . . . for guidance.").

*Corp. v. Green*, 411 U.S. 792, 802 (1973); *see also Trs. of Forbes Library v. Labor Relations Comm'n*, 384 Mass. 559, 564 (1981). If defendants succeed in meeting this relatively light burden of production, "the burden [then] shifts back to [Hall] to show that the proffered legitimate reason is in fact a pretext and that the job action was the result of the [defendants'] retaliatory animus." *Collazo v. Bristol-Myers Squibb Mfg., Inc.*, 617 F.3d 39, 46 (1st Cir. 2010) (citation omitted); *see also Matthews v. Ocean Spray Cranberries, Inc.*, 426 Mass. 122, 128 (1997) ("If the defendant's reasons are not discriminatory, and if the plaintiff does not prove that they are pretexts, the plaintiff cannot prevail [at trial].").

That Hall has established a prima facie showing of retaliation is not a matter of great dispute. *See Mariani-Colón v. Dep't of Homeland Sec.*, 511 F.3d 216, 224 (1st Cir. 2007) (describing "the relatively light burden of establishing a prima facie case of retaliation"). Hall's internal complaints to Butler and Narahara about his mistreatment by DeWane, his attorney's complaint letters, and the filing of the EEOC and MCAD charges constitute protected activity. *See Hernandez-Torres v. Intercont'l Trading, Inc.*, 158 F.3d 43, 47 (1st Cir. 1998) (finding that an "informal complaint" to an employer's personnel department constituted "sufficient opposition"); *Mariani-Colón*, 511 F.3d at 223 ("[A]ppellant undoubtedly engaged in a

9

protected activity when he contacted TSA human resources department and the EEOC alleging he was the target of illegal discrimination."); *Ritchie v. Dep't of State Police*, 60 Mass. App. Ct. 655, 664-665 (2004) (noting that protected conduct includes the filing of internal grievances as well as formal complaints). Hall also suffered the classical material adverse action: termination.[9] Third, Hall's termination three weeks after filing his EEOC and MCAD complaints is close enough in temporal proximity to permit an inference of a causal connection. *See Mole*, 442 Mass. at 595 ("Where adverse employment actions follow close on the heels of protected activity, a causal relationship may be inferred."); *Clark Cty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001), quoting *O'Neal v. Ferguson Constr. Co.*, 237 F.3d 1248, 1253 (10th Cir. 2001) ("The cases that accept mere temporal proximity between an employer's knowledge of protected activity and an adverse employment action as sufficient evidence of causality to establish a prima facie case uniformly hold that the temporal proximity must be 'very close.'").

Defendants, in turn, have articulated a legitimate, non-discriminatory business reason for Hall's termination, namely his poor sales performance.

---

[9] Some of the supposed retaliatory acts alleged by Hall, such as DeWane's yelling at him for questioning his "character and integrity" and DeWane's reconfiguration of his sales territory do not meet the materiality test or are otherwise protected by the business judgment rule. Hall's Opp'n (Dkt # 36) at 13.

In his seven years while working at Hayes, Hall only met his annual sales quota once. Because of the poor sales numbers, Hall had received a written warning (in November of 2015) and was thereafter placed on a performance improvement plan (in January of 2016) and given a reduced sales quota. Despite the accommodations, Hall failed to meet even his reduced sales quota for 2016, and was terminated on January 3, 2017. That Hayes was within its rights to fire Hall for poor performance cannot be gainsaid. *See Smith v. F.W. Morse & Co.*, 76 F.3d 413, 422 (1st Cir. 1996) ("[C]onsistent with its business judgment, . . . an employer can hire or fire one employee instead of another for any reason, fair or unfair, provided that the employer's choice is not driven by . . . some . . . protected characteristic."); *Mesnick v. Gen. Elec. Co.*, 950 F.2d 816, 825 (1st Cir. 1991) ("Courts may not sit as super personnel departments, assessing the merits — or even the rationality — of employers' nondiscriminatory business decisions.").

Recognizing the adequacy of defendants' proffered explanation for his termination, Hall looks to the third step of the burden-shifting matrix, arguing that despite its surface plausibility, the reason offered by Hayes is pretextual. As "evidence" of pretext, he quibbles with the fact that Hayes used billed rather than booked revenues in calculating his performance. He argues that his booked revenues for 2016 amounted to 76.4% of his sales

11

quota, as opposed to the 50.5% of quota calculated using billed revenues. The fact, however, remains that, by whatever measure, Hall did not meet his sales quota in 2016. Termination for failure to perform was not a rule introduced by Hayes to justify Hall's termination — the performance policy was in place and had been explained to Hall at the time he was hired, and at least five other employees (if not eight) lost their jobs in the interim leading to Hall's firing for the same reason.

At the November 6, 2018 hearing on defendants' motion, Hall's counsel, acknowledging the shortcomings of the pretext argument, shifted the thrust of Hall's case to a cat's paw theory, namely that DeWane, even though he did not directly participate in the decision to terminate Hall, brought undue influence on Butler, Narahara, and Cronin to fire Hall because of his sexual orientation. *See Velazquez v. Developers Diversified Realty Corp.*, 753 F.3d 265, 267 (1st Cir. 2014). ("[T]he employer faces liability if: the co-worker acted, for discriminatory reasons, with the intent to cause the plaintiff's firing; the co-worker's actions were in fact the proximate cause of the termination; and the employer allowed the co-worker's acts to achieve their desired effect although it knew (or reasonably should have known) of the discriminatory motivation.").

The weaknesses in this attempted reconfiguration of the case are two. First, counsel conceded that there is no evidence that any of the three principals (Butler, Narahara, and Cronin) had any animus or bias against Hall. Second, and a more critical consideration, she conceded that there is no evidence that DeWane was involved in the decision to fire Hall, only the speculation that DeWane could plausibly have orchestrated Hall's downfall because he harbored "a retaliatory state of mind toward Hall and wanted to punish him."[10] Hall's Opp'n (Dkt # 36) at 18. It is true that "[s]ummary judgment is a disfavored remedy in the context of discrimination cases based on disparate treatment," particularly where state of mind is at issue. *Blare v. Husky Injection Molding Sys., Boston, Inc.*, 419 Mass. 437, 439 (1995). Nonetheless, "[w]e have upheld summary judgment in favor of defendants where . . . the plaintiff is unable to offer admissible evidence of the defendant's discriminatory intent, motive, or state of mind . . . ." *Matthews*, 426 Mass. at 127. "Even in cases where elusive concepts such as motive or

---

[10] In this vein, Hall argues that Butler must have relied on DeWane in deciding to terminate Hall because the termination letter states that the decision was made based on a "sales analysis." Hall's Opp'n (Dkt # 36) at 19. Hall speculates that since Cronin had no real sales experience, it is unlikely that he could have conducted such an analysis. However, the "sales analysis" here is hardly a matter of any complexity: Hall failed to meet his sales quota for 2016, as he failed to do in 2010, 2012, 2013, 2014, and 2015. Even had DeWane conducted such an analysis, there is no dispute that those numbers accurately reflect Hall's job performance.

intent are at issue, summary judgment may be appropriate if the nonmoving party rests merely upon conclusory allegations, improbable inferences, and unsupported speculation." *Medina-Munoz v. R.J. Reynolds Tobacco Co.*, 896 F.2d 5, 8 (1st Cir. 1990). Such is the case here, and the only reasonable result is an award of summary judgment to defendants on the remaining claim of state-law retaliation.

## ORDER

For the foregoing reasons, defendants' motion for summary judgment is <u>ALLOWED</u>. The Clerk will enter judgment for defendants and close the case.

SO ORDERED.

<u>/s/ Richard G. Stearns</u>
UNITED STATES DISTRICT JUDGE